# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DENNIS HAL WILBORN, d/b/a Wilborn Outdoors,** ) ) ) | |
| Petitioner, ) ) | Civil Action Number |
| vs. ) ) | 5:14-cv-00991-AKK |
| **Bureau of Alcohol, Tobacco, Firearms, and Explosives,** ) ) ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("the ATF") stripped Dennis Wilborn, doing business as Wilborn Outdoors, of his federal firearms license after repeat violations of the Gun Control Act ("GCA"). As a result, Wilborn petitioned the court for a *de novo* review of the ATF's decision. Doc. 1. The ATF has filed a motion to dismiss and, alternatively, a motion for summary judgment, docs. 6, 7, which is fully briefed, *see* docs. 11, 12, and ripe for review. Because the parties have submitted affidavits and other exhibits in support of and in opposition to the motion, the court construes this motion solely as a motion for summary judgment. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 (11th Cir. 2006). Based on the evidence and the law, for the reasons stated

1

fully below, the court finds that the ATF has established that Wilborn willfully violated the GCA, and that its motion is due to be granted.

## I.    SUMMARY JUDGMENT STANDARD OF REVIEW

"Notwithstanding the posture of this action as an appeal from an ATF administrative decision, the summary judgment standard is unchanged." *Willingham Sports, Inc. v. ATF*, 348 F. Supp. 2d 1299, 1307 (S.D. Ala. 2004) (hereinafter *Willingham Sports I*). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When

reviewing a license revocation by the Attorney General, summary judgment is appropriate where "there is no genuine issue of material fact about whether [a licensee's] continued and repeated failure to comply [with the GCA] was willful." *Willingham Sports, Inc. v. ATF*, 415 F.3d 1274, 1278 (11th Cir. 2005) (hereinafter *Willingham Sports II*).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the Plaintiff's favor when sufficient competent evidence supports the Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury

could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II. FACTUAL BACKGROUND

Wilborn held a Federal Firearms License authorizing him to sell firearms at his store in Cullman, Alabama.[1] Doc. 7-3 at 1. In 2011, the ATF inspected Wilborn Outdoors and determined that Wilborn failed to timely record the acquisition and disposition of multiple firearms, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e), and to report the multiple sale of handguns, in violation 18 U.S.C. §923(g)(3)(A) and 27 C.F.R. § 478.126(a). Doc. 7-30 at 1-6. An ATF investigator subsequently reviewed the violations with Wilborn and requested corrective action. *Id.* at 1. Additionally, a senior ATF official held a "warning conference" with Wilborn, *id.* at 3; doc. 7-38 at 14-16, which the ATF followed up with a letter informing Wilborn that additional violations "could be viewed as willful" and "may result in the revocation of [his federal firearms] license, and that further inspections by the ATF should be expected." Doc. 7-32 at 1-4.

---

[1] Wilborn Outdoors held Federal Firearms License number 1-63-043-01-4L-33996. Doc. 7-3 at 1. Wilborn disputes the ATF's claim that he does not currently hold a federal firearms license, asserting that the Attorney General lacks the authority to revoke his license. Doc. 11 at 2. This contention does not, however, qualify as a dispute of material fact because whether the Attorney General possesses the authority to revoke Wilborn's license is a legal question and, ultimately, the main issue underlying this litigation.

In response to the citations and warnings, Wilborn implemented new record keeping processes, spending "thousands of dollars in employee time training [his] staff and updating [his] procedures." Doc. 11-1 at 2; *see also* docs. 7-1 at 1;7-39 at 22; 7-40 at 1-3. Wilborn also rearranged the store to better protect his guns from theft. Doc. 11-1 at 1. Finally, Wilborn and several staff members tried to attend an ATF training seminar at the Madison Library in Madison, Alabama, but found out that the seminar was actually at a different library with a similar name. Docs. 7-2; 7-39 at 15-17.

Consistent with the warning letter, ATF Investigator John Woodruff ("Woodruff") inspected Wilborn Outdoors in May and June of 2013. Doc. 7-29 at 1-5. After reviewing the records and inventory, doc. 7-37 at 14-16, Woodruff determined that Wilborn Outdoors had violated several provisions of the GCA. First, Wilborn failed to timely record firearms sales and failed to file multiple-firearm-sales reports.[2] Docs. 7-29 at 1, 5; 7-38 at 13. Specifically, Wilborn violated 18 U.S.C § 923(g)(1)(A) and 27 C.F.R. § 478.125(e) when he failed to timely record the sale or disposition of 39 firearms identified in his acquisition and disposition records (ADR). Docs. 7-4 at 2-4; 7-29 at 1. Second, Woodruff could

---

[2] Woodruff also cited Wilborn for the transfer of firearms to non-licensees prior to contacting the National Instant Check System (NICS) to conduct a criminal background check, failure to obtain and record complete and accurate information required by Firearms Transactions Records Forms, failure to record results of NICS checks on ATF Form 4473, and failure to sign as transferor of firearms and to record the transfer date on ATF Form 4473. Doc. 7-29 at 1-5.

not find 13 of the 39 firearms in Wilborn Outdoors' inventory even though the store's records indicated that it had them in stock. Doc. 7-4 at 2-4. Third, Wilborn also failed to keep his ADR consistent with his Firearms Transactions Records. Doc. 7-37 at 15-16. Finally, Wilborn violated 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126(a) when he failed to file multiple-firearm-sales-reports on nine separate occasions. Doc. 7-4 at 4-5.

     In light of these new violations, the ATF served Wilborn with a Notice of Revocation of License based on his failure to timely record the sale or disposition of 39 firearms and his failure to file nine multiple-firearm-sales reports. *Id.* at 2, 4. Wilborn requested an administrative hearing, docs. 7-5 at 1; 7-8 at 1, which the ATF held on February 11, 2014, doc. 7-8 at 1. At the hearing, Wilborn admitted the violations, and acknowledged that he had knowledge of the GCA's requirements after the 2011 inspection, that the ATF explained the 2011 violations to him at a warning conference, and that the ATF notified him by letter that it may revoke his license if he again violated the GCA. Docs. 7-39 at 10-13,19-22; 7-40 at 1-2, 7-8, 12. Despite his admissions, Wilborn contested the revocation by detailing the remedial steps he implemented after the 2013 inspection[3], and argued that he had only inadvertently, rather than willfully, violated the GCA. Docs. 7-1 at 1; 7-2 at 1; 7-38 at 21-22; 7-39 at 1-3, 13-17; 7-40 at 13.

---

[3] Wilborn implemented a "new, more aggressive check system," doc. 7-1 at 1, and requested a firearms records and procedures training seminar at his store, doc. 7-2.

The hearing officer issued a memorandum to the ATF's Director of Industry Operations, finding that a substantial basis existed to believe that Wilborn had knowledge of the requirements of the GCA and its attendant regulations prior to the 2013 violations, and that Wilborn's violations were the result of "purposeful disregard or plain indifference." Doc. 7-33 at 8. Based on this finding, Kevin Boydston, a regional ATF Director of Industry Operations, issued a Final Notice of Revocation and informed Wilborn that he could petition the court for a review pursuant to 18 U.S.C. § 932(f)(3). Doc 7-34 at 1-8. Wilborn exercised his right and filed the petition with this court. Docs. 1, 10.

## III. ANALYSIS

The court has before it the ATF's motion in which it asserts that Wilborn's admitted violations rise to the level of willfulness as a matter of law and, therefore, the Attorney General was entitled to revoke Wilborn's license. The court agrees with the willfulness finding.

### 1. Review under 18 U.S.C. § 923(f)(3)

Title 18 allows a firearms dealer to challenge a revocation by "fil[ing] a petition with the United States district court for the district in which he resides or has his principal place of business for a *de novo* judicial review of such denial or revocation." 18 U.S.C. § 923(f)(3). The court's review is not limited to the record developed during the administrative appeal, but may include "any evidence

submitted by the parties to the proceeding whether or not such evidence was considered at the hearing." 18 U.S.C. § 923(f)(3). Following the *de novo review*, if the court decides that the "Attorney General was not authorized . . . to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court." *Id.* Under the *de novo* standard of review, the ATF's decision is entitled to no presumption of correctness. *See, e.g. Willingham I,* 348 F. Supp. 2d at 1306. In conducting its own review, although the firearms dealer has no absolute right to an evidentiary hearing before the court, the court must give the parties an opportunity to present additional evidence.[4] *Id.*

### 2. Willfulness of Wilborn's Violations

The Attorney General can revoke a dealer's federal firearms license if the dealer willfully violates the record-keeping or reporting provisions of the GCA. 18 U.S.C. § 923(e). Because Wilborn admits that he violated these regulations, docs. 7-39 at 10-13, 19-21; 7-40 at 12, the dispositive question is whether he did so "willfully." A violation is "willful" if it shows "purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers . . . ."

---

[4] While the court finds no reason to hold an evidentiary hearing, the court accepts as part of the record Wilborn's affidavit, doc. 11-1, which was filed along with his brief in opposition to summary judgment.

*Willingham Sports II*, 415 F.3d at 1277. A licensee's violations are willful if they occur "after [he] has been informed of the regulations and warned of violations." *Id*. Factors to weigh in determining "willfulness" include (1) prior knowledge of the record keeping obligations, (2) repeated failure "to comply with . . . the same or similar" regulations, and (3) receipt of a warning letter "advising [the licensee] that repeated violations of the regulations could result in the revocation of its license." *Id.*

Unfortunately for Wilborn, the undisputed facts establish that his actions satisfy the *Willingham II* factors. First, Wilborn admitted that he understood the record-keeping obligations prior to the 2013 citations. Docs. 7-39 at 22; 7-40 at 1-2. Indeed, the ATF placed Wilborn on notice of his obligations when, in 2011, a senior ATF official described the nature and severity of the violations. Docs. 7-30 at 1, 3; 7-38 at 14-16. Second, Wilborn repeatedly violated the GCA, as indicated by his citations in 2011 and 2013 for failing to timely record firearms sales and to file multiple-firearm-sales reports. Docs. 7-29 at 1, 5; 7-39 at 13. Finally, it is undisputed that the ATF followed up the 2011 violations with a letter informing Wilborn that subsequent violations would result in a revocation of his license, and that he should expect further inspections. Doc. 7-32 at 1-4.

To support his contention that the ATF cannot demonstrate willfulness, Wilborn argues that first he has not "repeatedly" violated the GCA because the ATF only cited him once after the 2011 inspection and warning conference. Doc.11 at 7-8. According to Wilborn, *Willingham Sports II* stands for the proposition that "the ATF must prove that the dealer <u>repeatedly</u> violated the Gun Control Act '<u>after</u> it has been informed of the regulations and warned of violations.'" *Id.* at 7 (quoting *Willingham Sports II*, 415 F.3d at 1277) (emphasis in original). Basically, Wilborn argues that a licensee must receive more than one citation after an initial citation in order for the ATF to establish the repeat violations necessary for a revocation. The court disagrees because "[t]he primary significance of prior citations is the notice that they give to the licensees of their responsibilities under the act." *Franklin Gun Shop, Inc. v. Gonzalez*, No. 3:05-cv-87, 2006 WL 2263992 at *7 (M.D. Ga. Aug. 8, 2006) (summarizing three representative cases where a Federal Firearms License was revoked after one or two citations); *see also Luna Tech, Inc. v. Bureau of Alcohol, Tobacco and Firearms*, 183 Fed. App'x 863 (11th Cir. 2006) (license was properly revoked without any indication of prior citations when the ATF proved that the licensee was aware of regulations before violating them); *Nationwide Jewelry and Pawn, Inc.*, 455 F. Supp.2d 1379 (M.D. Ga. 2006) (license revoked when licensee violated the GCA after one prior violation). In other words, because a prior citation

is a factor evidencing that a licensee possessed knowledge of his obligations, it follows that a violation occurring after the first citation is evidence that the licensee willfully disregarded those obligations. Accordingly, the court finds that the ATF is not required to prove multiple subsequent citations following an initial citation in order to demonstrate willfulness.

Wilborn argues next that the ATF cannot establish willfulness because he made reasonable efforts to comply with the GCA, which while "not always successful . . . ," demonstrate that his failures were not "purposeful[]." Doc. 11 at 8 (emphasis in original). To bolster his legal argument, Wilborn asserts that his conduct is "far [less] egregious" than the conduct in *Willingham Sports I* and *II*. *Id.* at 11. Unfortunately for Wilborn, post-citation efforts to comply with the GCA do not affect the Attorney General's authority to revoke his license. *Luna Tech, Inc.*, 183 Fed. App'x at 855. Likewise, whether Wilborn possessed a "bad purpose or evil motive," or indeed whether he violated one or multiple regulations, has no bearing on the issue of willfulness. *Willingham Sports II*, 415 F.3d at 1276; *Willingham Sports I*, 348 F. Supp. 2d at 1309 n.14. Despite Wilborn's efforts to comply with the GCA, the fact remains that Wilborn still committed several infractions after the ATF placed him on notice the he had to comply with the GCA. While Wilborn may believe that the ATF's actions are unduly harsh, the court simply cannot ignore that the main purpose of the GCA is "to keep firearms away

from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). One key way to achieve this purpose is for licensed dealers like Wilborn to fully comply with the record keeping requirements of the GCA. As Judge Steele of the Southern District of Alabama aptly puts it, "[i]f ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' irrespective of how trifling they may appear, the GCA would appear to fit that bill." *Willingham Sports I*, 348 F. Supp. 2d at 1309 n.14. Wilborn's failure to fully "sweat the details" is sufficient to vest the Attorney General with the right to revoke his license.

### III.  CONCLUSION

For the reasons noted above, the court finds that there is no genuine dispute of material fact and that Wilborn's failure to comply with the GCA was willful as a matter of law. Therefore, the Attorney General possessed the authority to revoke his license. Accordingly, the ATF's motion for summary judgment is due to be granted. The court will enter a separate order consistent with this opinion.

**DONE** the 30th day of October, 2014.

_____
     **ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE